UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEVEN JUDE HOFFENBERG, | : | |
| | : | Civil Action No. 09-3375 (RMB) |
| Petitioner, | : | |
| v. | : | **MEMORANDUM OPINION & ORDER** |
| | : | |
| WARDEN, FORT DIX PRISON, | : | |
| Respondent. | : | |

This matter comes before the Court upon submission of an application, filed pursuant to 28 U.S.C. § 2241 ("Petition"), by Petitioner Steven Jude Hoffenberg ("Petitioner"), an inmate confined at the F.C.I. Fort Dix ("Fort Dix"), and it appearing that:

1. On July 9, 2009, the Clerk received the Petition, see Docket Entry No. 1, which arrived unaccompanied by either Petitioner's filing fee of $5.00 or by his in forma pauperis application. See id.

2. One week later, that is, on July 16, 2009, the Clerk received a letter from Petitioner noting Petitioner's concern that Petitioner did not receive a "reply from Court Clerk's Office" and expressing Petitioner's opinion that such lack of "reply" must have been indicative of Petitioner's prison officials' "obstruction" of Petitioner's access to his legal mail. See Docket Entry No. 2. In response, the Clerk forwarded Petitioner a copy of the docket sheet in this matter. See id.

3. On July 17, 2009, the Clerk received Petitioner's motion ("Motion"), see Docket Entry No. 3, reasserting that the warden at Petitioner's place of confinement must be "obstructing" Petitioner's access to legal mail because Petitioner did not receive any correspondence from

    the Court during the first eight days of the pendency of this matter. See Docket Entry No. 3, at 1. Petitioner, therefore, requested that all correspondence to him be mailed by "special mail," although Petitioner did not clarify what he meant by "special mail." See, generally, Docket Entry No. 3.

4.     Petitioner pled guilty and was sentenced in the United States District Court for the Southern District of New York ("SDNY"). See Hoffenberg v. United States, 436 F. Supp. 2d 609, 2006 U.S. Dist. LEXIS 42222 (S.D.N.Y. 2006). The SDNY summarized Petitioner's underlying criminal proceedings as follows:

> From 1974 until April 1993, Hoffenberg served as the chief executive officer, president, and chairman of the board of Towers Financial Corporation ("TFC"). In February 1993, following a lengthy investigation, the Securities and Exchange Commission ("SEC") filed suit against Hoffenberg, TFC, and other TFC officials for, among other things, securities fraud through the circulation of false and misleading financial statements to investors regarding TFC's financial condition. Soon thereafter, in March 1993, TFC filed for bankruptcy. The collapse of TFC resulted in losses to investors totaling hundreds of millions of dollars. On April 19, 1994, Hoffenberg was indicted in the Northern District of Illinois on various fraud charges, including mail fraud. On April 20, 1994, Hoffenberg was indicted in the [SDNY] on numerous charges related to the SEC investigation and lawsuit, including mail fraud, securities fraud in connection with the sale of notes and bonds of TFC, unlawful conspiracy, and obstruction of justice. . . . The indictment pending in the Northern District of Illinois was transferred to the [SDNY]. On April 20, 1995, Hoffenberg pled guilty to four counts of a superseding information related to the April 20, 1994 indictment: (i) conspiracy to violate the securities laws by fraudulently selling securities . . . ; (ii) mail fraud . . . ; (iii) conspiracy to obstruct justice . . . ; and (iv) tax evasion . . . . Hoffenberg also pled guilty to one count of the indictment transferred from the Northern District of Illinois: mail fraud . . . . On March 7, 1997, [the SDNY Court] sentenced Hoffenberg to twenty years' imprisonment, followed by a three-year term of supervised release, as well as a $ 1 million fine, approximately $ 475 million in restitution, and a $ 50 special assessment on each of the five counts. Hoffenberg appealed his criminal conviction and sentence and on September 22, 1998 the Second Circuit affirmed the conviction and sentence. Hoffenberg filed a petition for rehearing and a petition for rehearing en banc, which the Second Circuit denied in a January 15, 1999 order. Hoffenberg is currently incarcerated and serving his sentence.

Id. at *2-5 (citations omitted).

5. As best as the Court can determine, the statements made in the Petition are summarized as follows:

   a. Petitioner is an "elderly person," in the sense that he has recently turned 65. See Docket Entry No. 1, at 2. At this juncture, Petitioner has served thirteen and a half years of his twenty-year prison sentence. See id. Petitioner, therefore, believes that he should be transferred from Fort Dix (and from being incarcerated in "a" federal correctional institution, in generally) to home confinement for the remainder of his sentence, under the Second Chance Act. See id. According to the Petition, Petitioner discussed his interest in being transferred to home confinement with his Unit Team officials sometimes in June and July of 2009. See id. During these two conversations, Petitioner developed an impression that the Unit Team officials were speaking on behalf of the Fort Dix warden, and that the warden somehow believed that he was not bound by the provisions of the Second Chance Act. See id. Petitioner, therefore, concludes his Petition by stating that this Court "is respectfully requested to order the respondent to consider Petitioner's home detention under the Second Chance Act now." Id. at 6 (capitalization, bolding and underlining removed); see also id., at 5 ("this . . . Court is simply requested to order the respondent to comply with the second chance act consideration for home detention. That is the only remedy in this instant motion") (capitalization, bolding and underlining removed).

   b. The remainder of the Petition seems to assert that the fact of Petitioner's confinement in Fort Dix somehow prevents collection of the restitution ordered in Petitioner's

        underlying criminal matter. See id.. at 3.  According to the Petition, the warden of Fort Dix "issued a number of written communication(s) stating that the Respondent will not comply with [the] restitution and fine court orders."[1]  Id. (capitalization, bolding and underlining removed, alternative plural in original).  It appears therefore that Petitioner is trying to assert that the warden is acting in contempt of Petitioner's sentencing court.

c.    In addition to the foregoing, the Petition contains a phrase reading "obstruction of [Petitioner's] court access ongoing," id. at 4 (capitalization, bolding and underlining removed), and refers to an "exhibit 2," which – however – is not included in Petitioner's submission.  See id.  Moreover, the Petition's "Statement of Facts" section concludes with the following phrase: "Leave to amend this motion into a civil rights litigation for jury trial under 28 U.S.C. § 1331 jurisdiction Federal Civil Rule 15 Foman v. Davis 9 L.Ed. 2d 222 (1962)."  Id. at 5  (capitalization, bolding and underlining removed).  Similarly, the last page of the Petition states:

> Should this Respondent seek to litigate this simple request for consideration of home detention, this . . . Court is requested to grant leave to amend this action.  This . . . Court is requested to order this Petitioner to amend this action under Federal Civil Rule 15, Foman v. Davis 9 L.Ed. 2d 222 (1962), into the Petitioner[']s civil rights action, under 28 U.S.C. § 1331 federal question jurisdiction. Order leave for the Petitioner to amend this action under Federal Civil Rule 15 into the Petitioner[']s civil rights action, 28 U.S.C. § 1331 federal question, Bivens, B.O.P. staff violations of scope of employment, ongoing staff liability, jury trial."

---

[1] The Petition also notes Petitioner's impression that the Attorney General of the United States "had interactions" with the warden about the restitution issue and that some unidentified United States senators and "members of the Judiciary Committee" are involved in the matter. See Docket Entry No. 1, at 4.  The Court is not entirely clear as to the relevance of these statements.

<blockquote>Id. at 5  (capitalization, bolding and underlining removed).</blockquote>

6. Petitioner's Motion, in addition to asserting that the warden is obstructing Petitioner's access to his legal mail and requesting unspecified "special mailing" by this Court, see Docket Entry No. 3, at 1-4, seeks an order from the Court: (a) directing intervention by the United States Attorney General, see id. at 3; and (b) directing the warden to pay Petitioner's filing fee in this matter, seemingly upon deduction of this fee from Petitioner's prison account. See id. at 5 ("This Court must simply order the Respondent to pay the Clerk's Office the five dollar filing fee in this action from Petitioner's Fort Dix prison account. Lewis v. Cases, 135 L. Ed. 2d 606 (1996) for court access") (capitalization, bolding and underlining removed).

7. The Court will not direct intervention by the United States Attorney General, since the decision whether to intervene is for the United States Attorney General to decide, and this Court sees no basis to deem the United States Attorney General an indispensable party to this litigation.

8. Nor will the Court direct the warden to deduct any funds from Petitioner's account: it is Petitioner's duty to either submit his filing fee or a certified in forma pauperis application qualifying Petitioner to proceed in this matter as a pauper.[2] The Court will, however, direct

---

[2] The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it may otherwise fail to comply with [Habeas] Rule 2. The [R]ule . . . is not limited to those instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the petition even though it lack[s] the required filing fee or an in forma pauperis form." 28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am. However, Section 1914, the filing fee statute, provides in relevant part that "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5." 28 U.S.C. § 1914(a). The accompanying provision, Section 1915, governs applications filed in forma pauperis and provides, in relevant part, that leave to proceed in forma pauperis may be granted in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses

the Clerk to provide Petitioner with a blank in forma pauperis application for habeas litigants.

9. This Court will not convert this matter into a civil rights action. In the event a litigant wishes to prosecute a civil complaint, the Clerk will not file such civil rights complaint unless the person seeking relief pays the entire applicable filing fee in advance or the person applies for and is granted in forma pauperis, status pursuant to 28 U.S.C. § 1915. See Local Civil R. 5.1(f). Unlike in habeas litigation, the filing fee for a civil complaint is $350.00. See 28 U.S.C. § 1914(a). Moreover, if a prisoner seeks permission to file a civil rights complaint in forma pauperis, the Prison Litigation Reform Act ("PLRA") requires the prisoner to file an affidavit of poverty and a prison account statement for the six-month period immediately preceding the filing of the complaint. See 28 U.S.C. § 1915(a)(2). The PLRA further provides that, if the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account

---

[if such affidavit demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); see also Smith v. Bennett, 365 U.S. 708, 712 (1961) ("[W]hile [$ 5.00] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]"); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001). Therefore, regardless of the outcome of this matter, Petitioner is obligated to submit either his filing fee of $5.00 or his certified affidavit of poverty qualifying him for in forma pauperis status. Cf. Kemp v. Harvey, 2006 U.S. Dist. LEXIS 8939, at 18 n.6 (D.N.J. Mar. 3, 2006) (observing that "it would be indeed anomalous to allow persons [stating no cognizable claim] to usurp judicial resources and bring claims without payments while obligating every litigant [stating a cognizable claim] to pay the fee").

exceeds $10.00. See 28 U.S.C. § 1915(b). In addition, if the prisoner is granted permission to proceed in forma pauperis, then the PLRA requires this Court to screen the complaint for dismissal and to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief. Finally, the PLRA provides that, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). Thus, the decision as to whether to incur the legal and financial responsibilities ensuing from initiation of a civil matter is for Petitioner, rather than for this Court, to decide. The Court, in order to provide Petitioner with a starting point (in the event Petitioner decides to initiate a civil matter), will direct the Clerk to serve Petitioner a blank civil complaint and a blank in forma pauperis application for civil litigants.

10. In the event Petitioner wishes to litigate the warden's alleged obstruction of Petitioner's access to his legal mail, Petitioner cannot raise such challenges in this habeas matter. Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint. See Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement of confinement [fall within the realm of] a § 1983 action." Id. The Court of Appeals for the

Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App. 882 (3d Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App. 551, 553-54 (3d Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint). Since Petitioner's access to legal mail does not affect the duration of Petitioner's confinement, Petitioner's Bivens challenges will be dismissed without prejudice to Petitioner's raising these challenges in a proper civil action. The Court stresses that no statement made in this

   Memorandum Opinion & Order shall be construed as expressing an opinion as to the substantive or procedural validity of Petitioner's civil rights challenges.

11. Finally, Petitioner's challenges based on the Second Chance Act will be dismissed, without prejudice, as unexhausted.

  a. The relevant portion of the Second Chance Act provides as follows:

> Elderly and family reunification for certain nonviolent offenders pilot program.
> (1) Program authorized.
>  (A) In general. The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>  (B) Placement in home detention. In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention.
>  (C) Waiver. The Attorney General is authorized to waive the requirements of section 3624 of title 18, United States Code, as necessary to provide for the release of some or all eligible elderly offenders from the Bureau of Prisons facility to home detention for the purposes of the pilot program under this subsection.
> (2) Violation of terms of home detention. A violation by an eligible elderly offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to the designated Bureau of Prisons institution in which that offender was imprisoned immediately before placement on home detention under paragraph (1), or to another appropriate Bureau of Prisons institution, as determined by the Bureau of Prisons.
> (3) Scope of pilot program. A pilot program under paragraph (1) shall be conducted through at least one Bureau of Prisons facility designated by the Attorney General as appropriate for the pilot program and shall be carried out during fiscal years 2009 and 2010.
> (4) Implementation and evaluation. The Attorney General shall monitor and evaluate each eligible elderly offender placed on home detention under this section, and shall report to Congress concerning the experience with the program at the end of the period described in

>>paragraph (3). The Administrative Office of the United States Courts and the United States probation offices shall provide such assistance and carry out such functions as the Attorney General may request in monitoring, supervising, providing services to, and evaluating eligible elderly offenders released to home detention under this section.
>
>(5) Definitions. In this section:
>
>>(A) Eligible elderly offender. The term "eligible elderly offender" means an offender in the custody of the Bureau of Prisons--
>>
>>>(i) who is not less than 65 years of age;
>>>
>>>(ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence. . . , sex offense . . . and has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced;
>>>
>>>. . . .
>>>
>>>(vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and
>>>
>>>(vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

42 U.S.C. § 17541(g).

b. Here, it appears that Petitioner served less than 75% of his twenty-year sentence, since – according to the Petition – he has served only thirteen and a half years. However, because this Court has no information about Petitioner's good-conduct credit or pre-conviction confinement, or similar factors that might render Petitioner's already-served period of confinement equal to 75% of his sentence, the Court – out of an abundance of caution – enters no opinion as to whether Petitioner could be eligible for consideration under Section 17541(g). Similarly, the Court stresses that it expresses no opinion as to whether the pilot program encompasses the inmates at

    the Fort Dix facility or about other limitations that might be applicable under Section 17541(g), or about how these limitations might apply to Petitioner's circumstances, e.g., whether Petitioner's transfer to home confinement would home detention under this section will result in a substantial net reduction of costs to the Federal Government or whether Petitioner's home confinement would pose a substantial risk of criminal conduct or endangerment to any person or the public.

c. However, it is unquestionable that Petitioner's instant application should be dismissed as unexhausted. It is well settled that, although the exhaustion requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241"). In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 U.S. Dist. LEXIS 54310, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an

inmate files a request for administrative relief. See 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where she is confined. See id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and then, if still dissatisfied, to the Central Office of the Bureau of Prisons. See id. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.[3] See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008). The exhaustion requirement applies to all § 2241 matters, including the cases raising challenges under the Second Chance Act and – specifically -- challenges by the elderly inmates seeking home confinement. See, e.g., Cox v. Hogsten, 2009 U.S. Dist. LEXIS 6930 (E.D. Ky. Jan. 30, 2009) (dismissing, as unexhausted, challenges virtually identical to those at bar). Here: (a) it would be wholly anomalous for this Court to bind the warden, the Regional Office and the Central Office of the Bureau of Prisons by the impressions Petitioner developed as a result of his couple informal conversations with unspecified members of his Unit Team; and (b) the Petitioner fails to allege valid grounds for excuse of the exhaustion requirement.

IT IS, therefore, on this **31st** day of **August 2009**,

**ORDERED** that Petitioner's civil challenges are dismissed, without prejudice, to Petitioner's raising these challenges in a duly commenced civil action; and it is further

---

[3] To that extent, the Court notes that Petitioner's filing of allegedly 300 grievances is irrelevant to the issue of exhaustion, since Petitioner must raise the very challenges he wishes to litigate to all three levels of the Bureau of Prisons.

**ORDERED** that Petitioner's request to amend his Petition into a civil complaint, under Rule 15, is denied;[4] and it is further

**ORDERED** that Petitioner's Motion, Docket Entry No. 3, is denied with respect to Petitioner's requests for intervention by the United States Attorney General and for an order directing the warden to withdraw funds from Petitioner's account; and it is further

**ORDERED** that the Petition habeas challenges are dismissed, without prejudice, for failure to exhaust Petitioner's administrative remedies; and it is further

**ORDERED** that Petitioner's challenges asserting that Respondent is in contempt of the orders issued by Petitioner's sentencing court are dismissed for lack of jurisdiction;[5] and it is further

**ORDERED** that Petitioner must, on his own, submit his either filing fee of $5.00 or his in forma pauperis application within thirty days from the date of entry of this Order; and it is further

**ORDERED** that – in light of Petitioner's apparent concern that regular U.S. mail would not reach him – the Clerk shall serve a copy of this Memorandum Opinion & Order upon Petitioner, by certified mail, return receipt requested, together with a blank in forma pauperis application form for habeas litigants, blank in forma pauperis application form for civil litigants and a blank civil complaint; and it is finally

---

[4] Rule 15 of the Federal Rules of Civil Procedure envisions amendment of pleadings where substantive insufficiency of claims appears curable by re-pleading; the Rule does not envision re-qualification of one type of a legal matter into another type. Similarly, the Rule cannot be used to subrogate the filing fee requirement. See Fed. R. Civ. P. 15.

[5] Since Petitioner asserts that the actions of Respondent obstruct execution of the orders entered by Petitioner's sentencing court, the contempt claims should be raised before that tribunal. The Court notes, in passing, that – since the restitution and fines should be the proceeds received by various government agencies and/or by the persons/businesses injured by Petitioner – this Court expresses no opinion as to Petitioner's standing to raise these contempt challenges.

**ORDERED** that the Clerk shall close the file in this matter.

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**
